IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEDICATED CONTRACT**
**TRANSPORTATION, INC.,**

        **Plaintiff,**                  Case No. 2:09 CV 139
                                                JUDGE GREGORY L. FROST
        **v.**                           Magistrate Judge Terence P. Kemp

**INTERNATIONAL PAPER**
**COMPANY,**

        **Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Defendant's motion to dismiss (Doc. # 18), Plaintiff's memorandum in opposition to Defendant's motion (Doc. # 20), and Defendant's reply memorandum in support of its motion (Doc. # 23). For the reasons that follow, the Court **GRANTS** Defendant's motion.

**I. Background**

In 2006, Plaintiff entered into a three year "Dedicated Transportation Contract" with Weyerhaeuser Company for the transportation of freight (the "Contract"). (Complaint ¶ 3.) The Contract was transferred and assigned by Weyerhaeuser to Defendant in August 2008 in connection with Defendant's purchase of Weyerhaeuser's containerboard, packing, and recycling business. *Id.* ¶ 5.

Plaintiff alleges that it "had the obligation and the right, subject to mutually agreed-upon exceptions, to be the exclusive carrier for the transportation of freight on behalf of Weyerhaeuser from the Designated Plant Location to specified destinations listed in Schedule A of the Contract." *Id.* ¶ 3. Citing to paragraphs 3, 7, and 8 of the Contract, Plaintiff alleges that

"[u]nder the terms of the Contract, [Defendant] is to direct and pay [Plaintiff] to transport all of [Defendant]'s products from the Designated Plant Locations to the Designated Destinations." *Id.* ¶ 6 and Schedule A attached thereto. Paragraph 3 provides:

> 3. <u>Dedicated Service</u>. SHIPPER[1] has requested CARRIER to serve SHIPPER on a dedicated basis. CARRIER is willing to provide such service to the extent possible consistent with its equipment and driver availability. CARRIER, at its cost and expense, shall provide the equipment for use in the services to be performed hereunder as described in the attached Schedule B. This motor carrier equipment shall be adequate and satisfactory to SHIPPER. CARRIER and SHIPPER shall cooperate with one another in scheduling traffic to facilitate reasonably continuous movements.

Paragraph 7 provides in relevant part:

> 7. <u>Service, Rates, Charges and Volume Commitment</u>. The origins to be served, the commodities involved, rates and charges for CARRIER's service, and the volume of traffic SHIPPER has agreed to tender to CARRIER, as well as any additional terms and conditions related to service, rates, charges, and volume commitment are contained in Schedule A attached hereto. . . .

Paragraph 8 provides:

> 8. <u>Payment</u>. SHIPPER agrees to pay CARRIER, and CARRIER agrees to accept as full compensation for all transportation and services rendered in compliance with this Agreement, in accordance with rates, charges, rules and regulations set forth in the attached Schedule A.

Schedule A contains a nine-page rate chart listing the specific destination charges and a brief section entitled "Other Charges." *Id.* ¶ 9. The "Other Charges" section includes fees to be paid by Defendant for items such as additional tractors and trailers and work on holidays and weekends. *Id.* Schedule A further includes a category entitled Minimum Revenue Requirements ("MRR"), which provides:

> Minimum Revenue Requirements

---

[1] The Contract identifies Plaintiff as "carrier" and Defendant as "shipper."

>   $[confidential amount] per month in Mount Vernon
>   $[confidential amount] per month in Eaton
>   $[confidential amount] per month in Delaware and Indianapolis

*Id.* ¶10 and Schedule A.

The Contract also contains two integration clauses:

> 16. <u>Entirety and Amendment</u>.  This Contract contains all of the understandings of the parties and supersedes and replaces all prior written or oral agreements between them relating to the subject matter herein.  No amendment or modification of this Agreement shall be binding upon either party unless accepted in writing by both parties.  If any provision of this Agreement or any amendment thereof conflicts with the provisions of any tariff or rate schedule, the provisions of this Agreement shall apply.
>
> 24. <u>Entire Agreement</u>.  This Contract contains the complete understanding and agreement between the parties concerning the provision of motor transportation services by CARRIER on SHIPPER's behalf. No amendment, modification or waiver of this Contract shall be binding on either party unless it is reduced to writing and signed by both parties.

*Id.*

On February 13, 2009, Defendant informed Plaintiff that it planned to provide Plaintiff only with the minimum volumes set forth in the MRR for the remaining term of the contract.  *Id.* ¶ 14.  Defendant indicated that it would retain other freight carriers to transport the remainder of its products to the Designated Destinations.  *Id.*

On February 25, 2009, Plaintiff filed this action based upon diversity of citizenship, 28 U.S.C. § 1332, alleging claims for breach of contract, breach of implied contract, and breach of the duty of good faith and fair dealing.

On April 2, 2009, Defendant moved for dismissal of all of the claims against it.  That motion is currently ripe for review.

## II. Standard

Defendant moves under Fed. R. Civ. P. 12(b)(6), which provides for dismissal of actions that fail to state a claim upon which relief can be granted. Under this standard, a court must construe the complaint in favor of the plaintiff, accept the factual allegations contained in the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The claims must be "plausible" and not merely "conceivable." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## III. Analysis

Defendant requests dismissal for failure to state a claim upon which relief can be granted on each of the three claims Plaintiff has brought against it.

### A. Breach of Contract

In its first cause of action against Defendant, Plaintiff alleges that Defendant breached the terms of the Contract by: (1) "using carriers other than Plaintiff to transport product from Designated Plant Locations to Designated Destinations," (2) paying Plaintiff "only the amounts listed in the MRR provision," and (3) encouraging its customers to hire carriers other than Plaintiff. (Complaint ¶¶ 26-28.) Plaintiff explains that, although there is no exclusivity provision in the Contract, the parties intended for Plaintiff to be the exclusive carrier for the product that is the subject of the Contract. Plaintiff argues that this Court should consider extrinsic evidence regarding the contracting parties' intent as to the exclusivity of the Contract because the Contract does not define the terms "dedicated service" and "dedicated basis." (Doc. # 20 at 6.)

Defendant moves for dismissal of the breach of contract claim, arguing that the express terms of the Contract do not provide for Plaintiff to be its exclusive carrier. Defendant contends that to interpret the Contract as Plaintiff submits forces reading words and phrases into the Contract that materially change the parties' agreement as set forth in the fully integrated Contract. (Doc. # 18 at 4 citing the Contract ¶¶ 16, 24.) Defendant further argues that Plaintiff's reliance on the parties' alleged intent, in contradiction to the express terms of the Contract, violates well established Washington law.[2]

Consequently, the issue before this Court is whether Washington law permits Plaintiff to provide extrinsic evidence of the parties' alleged intent that the Contract requires Plaintiff to be the exclusive carrier for Defendant from and to the locations designated in the Contract.

The parol evidence rule bars extrinsic evidence offered to contradict or supplement an integrated, unambiguous contract. *Denny's Rests., Inc. v. Sec. Union Title Ins. Co.*, 71 Wash. App. 194, 202 (Wash. App. 1993). Washington follows "the objective manifestation theory of contracts." *Hearst Comm'n, Inc. v. Seattle Times*, 154 Wash. 2d 493, 503 (2005).

> Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. *Max L. Wells Trust v. Grand Cent. Sauna & Hot Tub Co. of Seattle*, 62 Wash. App. 593, 602 (Wash Ct. App. 1991). We impute an intention corresponding to the reasonable meaning of the words used. *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 123 Wash. 2d 678, 684 (Wash. 1994). Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used. *City of Everett v. Estate of Sumstad*, 95 Wash. 2d 853, 855 (Wash. 1981). We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Universal/Land Constr. Co. v. City of Spokane*, 49 Wash. App. 634, 637 (Wash. Ct. App. 1987).

---

[2]The parties agree that the Contract requires the application of Washington law to any dispute related to the Contract.

> We do not interpret what was intended to be written but what was written. *J.W. Seavey Hop Corp. of Portland v. Pollock*, 20 Wash. 2d 337, 348-49 (Wash. 1944), cited with approval in *Berg* [*v. Hudesman*], 115 Wash. 2d [657,] 669 [(Wash. 1990)].

*Id.* at 503-04. Parol evidence is admissible "as long as the court uses the extrinsic evidence to explain undefined contract terms, not to modify, vary, or contradict terms of the written contract." *King v. Rice*, 146 Wash. App. 662, 670 (Wash. Ct. App. 2008).

In the case *sub judice*, Plaintiff argues that the parol evidence will show that the parties selected the terms "dedicated service" and "dedicated basis" because "the contracting parties – with full awareness of the customs, usages and terminology of the trucking industry – intended that [Plaintiff] would serve as the exclusive motor carrier for certain services it was required to provide under the Contract." (Doc. # 20 at 6 and n. 2.) Further, Plaintiff argues that the MRR provision is subject to multiple interpretations and that it too requires presentation of parol evidence to determine its meaning. *Id.* at 9-10 and n. 3. Plaintiff's argument is unpersuasive.

That is, the Court concludes that it is not necessary to review parol evidence to explain the terms "dedicated service" and "dedicated basis." Giving the terms their ordinary, usual, and popular meaning,[3] the provision unambiguously provides that Plaintiff is obligated—to the extent possible consistent with Plaintiff's equipment and driver availability—to (a) provide and maintain a specified number of tractors and trailers to transport freight from the Designated Plant

---

[3] The "entirety" of the Contract does not "clearly demonstrate" a reason not to give the words used their ordinary, usual, and popular meaning. *Hearst Comm'n, Inc.*, 154 Wash. 2d at 503. Nor does Plaintiff provide any argument indicating that the words used are to be given something other than their ordinary, usual, and popular meaning. Thus, "the [w]ords should be given their ordinary meaning," preventing this Court from making "another or different contract for the parties under the guise of construction." *See Universal/Land Constr. Co.*, 49 Wash. App. at 637 (citing *Corbray v. Stevenson*, 98 Wash. 2d 410, 415 (Wash. 1982)).

Locations to the Designated Destinations, (b) provide equipment that must be adequate and satisfactory to Defendant, and (c) to employ in the operation of such equipment personnel qualified to operate such equipment. There is absolutely nothing about this language that requires further explanation or further definition and there is certainly nothing in this language that would imply or suggest that Defendant is obligated to use Plaintiff as its exclusive carrier.

With regard to the MRR provision, it provides three explicit dollar amounts that are to be paid to Plaintiff on a monthly basis for service from the three specific locations. There is nothing ambiguous about the MRR provision. Nor is there any reasonable interpretation of this provision, alone or in connection with the Contract as a whole, that indicates that Defendant is obligated to use Plaintiff as its exclusive carrier.

Finally, the extrinsic evidence that Plaintiff would like to present would undoubtedly modify or vary the written terms of the Contract. If Plaintiff's argument were accepted, it would turn Plaintiff's obligation to provide and maintain a specified number of tractors and trailers, to use qualified personnel to transport Defendant's product, and Defendant's obligation to pay Plaintiff a minimum amount of money per month into an obligation of Defendant to exclusively use Plaintiff to transport its product. Without question, adding such a requirement would serve to modify or vary the terms of the Contract and, as a result, the use of extrinsic evidence is impermissible under Washington law. *See King*, 146 Wash. App. at 670.

Consequently, the Court concludes that Plaintiff is precluded from introducing evidence of the intent of the parties because the intent can be determined from the actual words used." *Hearst Comm'n, Inc.*, 154 Wash. 2d at 503 (citing *City of Everett*, 95 Wash. 2d at 855). Based upon the express terms of the Contract, Defendant is not in breach of the Contract by using

7

carriers other than Plaintiff to transport product from Designated Plant Locations to Designated Destinations, by paying Plaintiff only the amounts listed in the MRR provision, or by suggesting to others companies not to employ Plaintiff.

Accordingly, even when construing the complaint in favor of Plaintiff and accepting the factual allegations contained in the complaint as true, those allegations do not present a plausible claim for breach of contract. *See Twombly*, 550 U.S. at 555-56.

**B. Breach of Implied Contract**

Plaintiff alleges that Defendant, by its "conduct, performance and dealings," entered into an implied contract to use Plaintiff's services exclusively to transport the product that is the substance of the Contract. Both parties direct the Court to Washington cases that hold that an implied contract may exist on a point that is not covered by an express contract:

> There cannot be an express contract and an implied one relating to the same subject matter and covering all its terms. In such case the express contract would supersede the implied one. But there may be an implied contract on a point not covered by an express one.

*Johnson v. Whitman*, 1 Wash. App. 540, 546 (Wash. Ct. App. 1969) (citing *Lautenbach v. Meredith*, 240 Iowa 166 (Iowa 1949)).

Here, Plaintiff and Defendant executed a written contract governing the relationship between them for a three year period. The Contract governs the shipment of certain commodities from and to certain designated locations. The Contract was entered into after a large-scale bidding process and extensive negotiations between two sophisticated parties. The Contract includes two integration clauses which specifically state that the writing contains a complete understanding and agreement between the parties concerning the provision of motor transportation services by Plaintiff on Defendant's behalf and that the Contract superseded and

8

replaced all prior oral or written agreements between them relating to that subject. Consequently, even if there were an implied contract, the fully integrated written contract would supersede it. *See Whitman*, 1 Wash. App. at 546.

Accordingly, Plaintiff has not alleged facts that raise its right to relief for its breach of implied contract claim above the speculative level. *Twombly*, 550 U.S. at 555-56 (2007).

### C. Breach of the Duty of Good Faith and Fair Dealing

Plaintiff alleges that Defendant has breached an implied duty of good faith and fair dealing by engaging in the same conduct that allegedly breached the Contract, *i.e.*, (1) using carriers other than Plaintiff to transport product from Designated Plant Locations to Designated Destinations, (2) paying Plaintiff only the amounts listed in the MRR provision, and (3) encouraging its customers to hire carriers other than Plaintiff. (Complaint ¶¶ 30-32.) Plaintiff fails to address this argument in its opposition memorandum but even if it would have done so, the claim would not have survived. Although Washington law provides that an implied duty of good faith and fair dealing exists in every contract, *Miller v. Othello Packers, Inc.*, 67 Wash. 2d 842, 844 (Wash. 1966), this duty is strictly limited to obligations actually imposed by the agreement. *See Badgett v. Sec. State Bank*, 116 Wash. 2d 563 (Wash. 1991).

In *Badgett*, the Washington Supreme Court held that, as a matter of law, there could not be a breach of the duty of good faith when the accused wrongdoer "simply stood on its rights to require performance of the contract according to its terms." *Id.* at 570. Although the *Badgett* plaintiff attempted to argue that the parties' prior course of conduct was sufficient to create new good faith obligations, the Court held otherwise, affirmatively stating that a "prior course of conduct between the parties could not create a new obligation on the part of the [defendant]. *Id.*

at 573. Instead, the duty of good faith and fair dealing requires only that the parties perform in good faith the obligations imposed by their agreement. *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 400 Wash. App. 630, 635-36 (Wash. Ct. App. 1985).

In the instant action, as discussed above, the express terms of the Contract do not prohibit Defendant from using carriers other than Plaintiff nor do they obligate Defendant to make payments to Plaintiff in excess of those outlined in the MRR provision. Thus, under the clear Washington precedent, Plaintiff's claim for breach of the duty of good faith and fair dealing is simply not a plausible claim. *See Twombly*, 550 U.S. at 555-56.

### IV. Conclusion

Based on the foregoing, the Court **GRANTS** Defendant's motion to dismiss. (Doc. # 18.) The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
**GREGORY L. FROST
UNITED STATES DISTRICT JUDGE**